UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOHN DOE,

                 Plaintiff,

       -against-

UNITED STATES MERCHANT MARINE
ACADEMY, JAMES A. HELIS, individually and as
Superintendent of the United States Merchant Marine
Academy, the UNITED STATES MARITIME
ADMINISTRATION, the UNITED STATES
DEPARTMENT OF TRANSPORTATION, AND THE
UNITED STATES OF AMERICA,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action No.
18-cv-1870

(JFB)(AKT)

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE**


RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

April 3, 2018


Diane C. Leonardo
Megan J. Freismuth
Assistant U.S. Attorneys
Of Counsel

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF THE CASE ................................................................................ 3

ARGUMENT  POINT I  PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF ...... 6

    A.  Plaintiff Cannot Succeed on the Merits of His Claims ........................................... 7

        1.  Plaintiff is Not Entitled to Judgment on His APA Claims ............................... 7

            i.  APA Standard of Review ........................................................................ 7

            ii.  Defendants Followed Their Policies and Procedures ................................. 8

            iii.  Defendants' Decision Was Not Arbitrary,  Capricious
               or Contrary To Law ............................................................................ 12

        2.  Plaintiff is Not Entitled to Judgment on His Constitutional Claims............... 13

            i.  Procedural Due Process ......................................................................... 13

            ii.  Impartial Decisionmaker....................................................................... 15

            iii.  Notice of the Issue of Consent ............................................................. 16

            iv.  Conduct of the Hearing......................................................................... 17

            v.  Substantive Due Process ....................................................................... 20

            vi.  Bivens ................................................................................................ 21

    B.  Plaintiffs Have Not Shown Irreparable Harm ..................................................... 22

    C.  Plaintiffs Have Not Shown That The Balance Of The Equities And The Public
       Interest Tilt In Their Favor ............................................................................... 23

POINT II - PLAINTIFF IS NOT ENTITLED TO FILE AS JOHN DOE ............................ 24

CONCLUSION...................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Able v. United States*, 44 F.3d 128 (2d Cir. 1995) .......................................................... 6

*Andrews v. Knowlton*, 509 F.2d 898 (2d Cir. 1975) ...................................................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 21

*Barnhart v. Walton*, 535 U.S. 212 (1995) ...................................................................... 11

*Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999) ..................................................................... 6

*Bivens v. Six Unknown Federal Bureau of Narcotics Agents*, 403 U.S. 388 (1971) ................. 1, 5

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) ....................................... 8

*C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307 (E.D.N.Y. 2016) ................. 21

*Camp v. Pitts*, 411 U.S. 138 (1973) ................................................................................ 8

*Carlson v. Green*, 446 U.S. 14 (1980) .......................................................................... 22

*Chase Bank USA, N.A. v. McCoy*, 562 US 195 (2011) ................................................. 10

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........... 10

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) ............................................ 23

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ................................. 8

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ..................................................... 22

*Costello v. McEnery*, 767 F. Supp. 72 (S.D.N.Y.1991) ................................................. 23

*Couer Alaska, Inc. v. Southeast Alaska Conservation Council*, 557 U.S. 261 (2009) ................. 11

*Crowley v. United States Merchant Marine Academy*, 985 F. Supp. 292 (E.D.N.Y. 1997)......... 17

*Davis v. Passman*, 442 U.S. 228 (1979) ........................................................................ 22

*DeFabio v. East Hampton Union Free School Dist.*, 658 F. Supp. 2d 461 (E.D.N.Y. Oct. 1, 2009) ........................................................................................................................ 15

*Doe v. Univ. of S. Alabama 2017 WL 3974997 (S.D. Ala. Sept. 8, 2017)……………………………14*

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ................................. 23

*Flaim v. Med. Coll. Of Ohio*, 418 F.3d 629 (6th Cir. 2005) ......................................................... 13

*Grant v. Demskie*, 75 F. Supp. 2d 201 (S.D.N.Y. 1999) ............................................................... 20

*Harrison v. New York*, 95 F. Supp. 3d 293 (E.D.N.Y. 2015) ........................................................ 22

*Horton v. Westling*, 2018 WL 922190 (N.D.N.Y. Feb. 15, 2018) ................................................. 21

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) .............................................................................. 7

*Liberty Maritime Corp. v. United States*, 928 F.2d 413 (D.C. Cir. 1991) ..................................... 8

*Lightsey v. King*, 567 F.Supp. 645 (E.D.N.Y. 1983) .................................................................... 13

*Lynch v. City of New York*, 589 F. 3d 94 (2d Cir. 2009)................................................................ 6

*Lyng v. Payne*, 476 U.S. 926 (1986) ........................................................................................... 8

*Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7 (2d Cir. 1985) ........................................... 23

*Mashack v. Jewell*, 149 F. Supp. 3d 11 (D.D.C. 2016)................................................................ 23

*Mazurek v. Armstrong*, 520 U.S. 968 (1997).............................................................................. 6

*McDonald ex rel. McDonald v. Sweetman*, 2004 WL 717166 (D.Conn. Mar. 24, 2004) ............ 15

*Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983) . 7, 8

*National Wildlife Federation v. Gorsuch*, 693 F.2d 156 (D.C. Cir. 1982) ................................... 8

*Nat'l Treas. Employees Union v. Horner*, 854 F.2d 490 (D.C. Cir. 1987)................................... 8

*Otoe-Missouria Tribe of Indians v. New York State Dept. of Financial Services*, 769 F.3d 105 (2d Cir. 2014)................................................................................................................................ 6

*Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005) ........................................................................... 21

*Plaintiffs #1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015)........................... 24, 25

*Plaza Health Lab., Inc. v. Perales*, 857 F.2d 577 (2d Cir. 1989) ................................................. 6

*Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) ....................................... 22

*Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008)....................................... 24

*State of Connecticut Dep't of Envtl. Prot. v. OSHA*, 356 F.3d 226 (2d Cir. 2004)....................... 6

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) ................................................................... 6

*Tom Doherty Assocs., Inc. v. Saban Entmt., Inc.*, 60 F.3d 27 (2d Cir. 1995)............................... 7

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969 (2d Cir. 1989) ................................ 22

*United States v. Larinoff*, 431 U.S. 864 (1977) ............................................................. 8

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ........................................................ 11

*Wasson v. Trowbridge*, 382 F.2d 807 (2d Cir. 1967) .................................................... 13

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .................................................. 24

*Wilkie v. Robbins*, 551 U.S. 537 (2007) .................................................................... 22

*Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972) .................................................. 13, 16

*Wright v. Giuliani*, 230 F.3d 543 (2d Cir. 2000) ......................................................... 6

**State Cases**

*People v. Arthur*, 673 N.Y.S.2d 486 (N.Y. Sup. Ct. 1997) ............................................ 19

*Weber v. State Univ. of N.Y.*, 150 A.D.3d 1429 (3d Dep't. 2017) ................................ 13, 16

**Federal Statutes**

5 U.S.C. § 706(2)(A) ................................................................................................ 7

5 U.S.C. §§ 701 ...................................................................................................... 1

46 U.S.C. § 51301 .................................................................................................. 3

46 U.S.C. § 51318 ............................................................................................ 3, 8, 10

**Federal Regulations**

46 C.F.R. § 310.67 ............................................................................................... 4, 9

46 CFR 310.65(b) .................................................................................................. 2

**Other Authorities**

N.Y.S. Senate Bill 5965 .......................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiff John Doe ("Plaintiff") brings this Order to Show Cause under the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-06, the Due Process Clause of the Fifth Amendment,

and Bivens v. Six Unknown Federal Bureau of Narcotics Agents, 403 U.S. 388 (1971)("Bivens")

for review of a disciplinary decision of the United States Merchant Marine Academy

("Academy" or "USMMA") to set Plaintiff back for one year as a penalty for violating the

Academy's sexual assault policy.  This memorandum of law is respectfully submitted in

opposition to the Order to Show Cause. [1]

Plaintiff, a Midshipman, was scheduled to graduate from the Academy on June 16, 2018

after successful completion of the third term of the Academy's academic year and licensing

examination administered by the United States Coast Guard ("USCG").  However, on January

17, 2018, Plaintiff was charged with four violations of Superintendent Instruction 2016-02,

*Sexual Assault, Dating Violence, Domestic Violence, Stalking, Prevention Education, and*

*Response Policy* ("SI 2016-02") and Midshipman Regulations governing sexual misconduct and

unlawful alcohol use.  After a full and fair hearing presided over by the Academy's

Superintendent, Defendant Admiral James A. Helis ("Admiral Helis" or the "Superintendent"),

at which Plaintiff and his attorney were present, the Academy found Plaintiff guilty of certain

alleged conduct, and as a penalty set him back to the graduating class of 2019.  The courses that

Plaintiff must complete to graduate are only offered once per academic year in the third

trimester; accordingly, Plaintiff will be permitted to complete his last trimester beginning in

---

[1]     The undersigned Assistant United States Attorneys respectfully request leave to exceed
Your Honor's 25-page limit for memorandum of law in order to present a full and fair summary
of the relevant evidence and case law.

March 2019.

Plaintiff now seeks, by an order to show cause, declaratory and injunctive relief. Specifically, Plaintiff's application demands an order of this Court directing Defendants to "immediately reinstat[e] Plaintiffs as a Midshipman at the Academy as a member of the class of 2018, allow him to complete his studies at the Academy and if successfully completed, to graduate . . . ." Complaint, p. 31, ¶ C.

Specifically, Plaintiff objects to the Academy's procedures governing discipline related to sexual misconduct allegations and demands additional procedures beyond what the Superintendent has promulgated pursuant to his statutory authority and beyond what is required by Due Process. Plaintiff has not, and cannot, allege any basis why deference should not be given to the decision of the Superintendent and the rules and procedures that the Academy has promulgated in order to accomplish its mission to graduate men and women with the traits of leadership, discipline and dedication required for a career that typically may include service at sea, maritime employment ashore, and service as a commissioned officer in an active duty or reserve component of the United States Armed Forces.[2]

As set forth herein, Plaintiff is not entitled to the relief he seeks. Plaintiff cannot meet the standards establishing a right to the extraordinary relief of a temporary restraining order or preliminary injunction, nor can he show irreparable harm and likelihood of success on the merits. Defendants have not violated the APA, nor have they denied Plaintiff any rights under the Due Process clause of the Fifth Amendment to the Constitution. Indeed, Plaintiff was not disenrolled and will have the opportunity to complete his final term and graduate with the class of 2019.

---

[2] Upon graduation, a midshipman may be commissioned as an officer in the United States Navy or USCG. 46 CFR 310.65(b) (1)

Furthermore, allowing Plaintiff to complete his coursework, as Plaintiff suggests, and graduate

on the condition that his degree could be returned or revoked pending the outcome of this lawsuit

would effectively nullify the Academy's disciplinary policies and procedures.  Even if the

Academy ultimately revoked the degree (for which it has no procedure to do so), the Academy

does not have the authority to revoke the USCG license or to decommission an individual from

reserve or active duty in the armed services.  Thus, it would also create an administrative burden

for the USCG and the Department of Defense, each of which would have to conduct its own

investigation and hold a hearing to revoke and/or decommission.

  Accordingly, Plaintiff is not entitled to the relief he seeks and his application should be

denied.  Further, the complaint should be dismissed for failure to state a claim.

## STATEMENT OF THE CASE

**A.**  **The Statutory and Regulatory Scheme**

  The Academy is a federal institution, operated by the Maritime Administration

("MARAD"), an operating administration of the Department of Transportation. The Secretary of

Transportation (the "Secretary") is authorized by statute to maintain the USMMA to provide

instruction to individuals to prepare them for service in the Merchant Marine of the United

States.  46 U.S.C. § 51301.  The Secretary has delegated to the MARAD Administrator

"authority to [c]arry out the functions and exercise the authorities vested in the Secretary under

Subtitle V of title 46, United States Code."  49 C.F.R. § 1.93.   The MARAD Administrator has

in turn delegated the direction and supervision of the USMMA to the Superintendent of the

Academy.  Maritime Administrative Order, 150-1.   The operation and maintenance of the

USMMA is governed by 46 U.S.C. § 51301, et seq., and the regulations promulgated thereunder.

See 46 C.F.R., Chapter II, Subpart C.  Specifically, 46 U.S.C. § 51318 requires the Secretary to

direct the Superintendent of the Academy to "prescribe a policy on sexual harassment and sexual

3

assault applicable to the cadets and other personnel of the Academy."  In addition, the

Superintendent "is delegated authority to issue all regulations necessary for the accomplishment

of the Academy's mission."  46 C.F.R. § 310.67.

Pursuant to this authority, the Superintendent promulgated policies and procedures

governing sexual misconduct, prevention education and procedures for disciplinary actions

involving sexual misconduct.  SI 2016-02 sets for the Academy's policy on sexual assault, dating

violence, domestic violence, stalking, prevention education, and response and addresses, <u>inter

alia</u>, victim reporting, disciplinary action, prohibition against retaliation, collateral misconduct in

sexual assault cases, education and training, and other responsibilities of the Academy.  <u>See</u>

Plaintiff's Order to Show Cause ("Plaintiff's Ex"),  Ex. B.  Midshipman Regulations, Paragraph

243, prohibits sexual misconduct, defined as "acts at the Academy, on Academy vessels, on team

movements, on board vessels assigned during sea training, or under circumstances that are

discrediting to the Academy or the midshipman, or are prejudicial to good order and discipline in

the Regiment of Midshipmen" and includes "any actions of a sexual nature that would

reasonably excite or satisfy the sexual desires of the actor. Examples of sexual misconduct

include kissing, touching, sexual intercourse of any sort, sexually motivated nudity, and indecent

exposure".  <u>See</u> Plaintiff's Ex. C.

## B.    Plaintiff's Disciplinary Hearing and Setback

On January 10, 2018, and by revised notices dated January 17, 2018 (changing the date of

the hearing) and January 25, 2018 (changing the date of the hearing and correcting the date of

incident), the Superintendent notified Plaintiff in writing that he was being charged with

violations of SI 2016-02, Midshipman Regulation paragraphs 243(a) and (b) for sexual

misconduct, and Midshipman Regulation paragraph 204(f) for failing to prevent an underage

individual from drinking unlawfully and/or irresponsibility in connection with events that

4

occurred at or after the USMMA Ring Dance on August 12 and/or 13, 2017 involving a private

citizen who was eighteen years old.  See Plaintiff's Exhibits D, E, and G.

The first phase of Plaintiff's disciplinary hearing on these charges was held on February

9, 2018.  During the hearing, at which the Plaintiff, his attorney and his faculty advisor were

present for the entirety, eleven witnesses, seven of whom were called by Plaintiff, testified;

Plaintiff was given the opportunity to question each of the witnesses called by the Academy;

Plaintiff gave opening and closing statements; and Plaintiff's faculty advisor also gave opening

and closing statements.

At the second phase of the disciplinary hearing on February 12, 2018, the Superintendent,

by written decision, found that: 1) Plaintiff had violated Superintendent Instruction 2016-02 and

paragraph 243(a) of the Midshipman Regulations; 2) the charge under paragraph 243(b) of the

Midshipman Regulations was redundant and dismissed it; and 3) Plaintiff did not violate

paragraph 204(f) of the Midshipman Regulations.  See Plaintiff's Ex. I.  Plaintiff was given until

February 19, 2018, seven days from the date of Phase II pursuant to Academy policy, to submit a

request for reconsideration of the findings.  Id.  Plaintiff's counsel requested, and was granted,

additional time to submit a reconsideration application.  The reconsideration request was

eventually submitted on March 3, 2018.  On March 20, 2018, Plaintiff's request for

reconsideration was denied and Plaintiff was directed to "immediately depart from the Academy

on leave of absence after completing [] check-out procedures."  See Plaintiff's Exhibit K.  The

instant Order to Show Cause was filed on March 28, 2018, approximately eight days after

Plaintiff was ordered to depart the Academy grounds.

**ARGUMENT**

**POINT I**

**PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original).  Generally, to obtain a preliminary injunction a moving party must establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party."  State of Connecticut Dep't of Envtl. Prot. v. OSHA, 356 F.3d 226, 230 (2d Cir. 2004) (citing Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999)).

However, where "the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard."  Sussman v. Crawford, 488 F.3d 136, 140 (2d Cir. 2007) (quoting Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000)); accord, Lynch v. City of New York, 589 F. 3d 94, 98 (2d Cir. 2009) (quoting Plaza Health Lab., Inc. v. Perales, 857 F.2d 577, 580 (2d Cir. 1989)); State of Connecticut, 356 F.3d at 230. "[T]his exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly."  Otoe-Missouria Tribe of Indians v. New York State Dept. of Financial Services, 769 F.3d 105, 110 (2d Cir. 2014) (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995)).

"Where a moving party challenges government action taken in the public interest pursuant to a statutory or regulatory scheme," the movant must "demonstrate irreparable harm and a likelihood of success on the merits." Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996) (emphasis added)(internal quotation marks and citation omitted).  Moreover, if the movant seeks a mandatory injunction that will alter, rather than maintain, the status quo, then the movant must make a clear or substantial showing of a likelihood of success on the merits." Id. (citing Tom Doherty Assocs., Inc. v. Saban Entmt., Inc., 60 F.3d 27, 33-34 (2d Cir. 1995).  Plaintiff, ordered to leave the Academy on March 20, 2018, eventually left on or about March 23, 2018.  Thus, Plaintiff seeks to alter the status quo in order to return to the Academy and, in addition since the instant action is one commenced against a governmental agency, the heightened standard described above applies.

**A.      Plaintiff Cannot Succeed on the Merits of His Claims**

**1.      Plaintiff is Not Entitled to Judgment on His APA Claims**

**i.      APA Standard of Review**

Section 702 of Title 5, United States Code, provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  Plaintiffs seek review of the USMMA's decision pursuant to this provision of the APA, under which the reviewing court must uphold a challenged agency action unless it finds that the action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The decision of the agency "is entitled to a presumption

of regularity." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415 (1971).  Still, the

court must engage in a "thorough, probing, in-depth review" to determine "whether the decision

was based on a consideration of the relevant factors and whether there has been a clear error of

judgment." Id. at 415-16.  The court must find that the agency "examine[d] the relevant data and

articulate[d] a 'rational connection between the facts found and the choice made'" to uphold the

decision.  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (quoting Burlington Truck Lines v. United

States, 371 U.S. 156, 168 (1962)).

Under the arbitrary and capricious standard, it is not appropriate for the court to review

the agency decision de novo.  Instead, "the focal point for judicial review should be the

administrative record and not some new record made initially in the reviewing court." Camp v.

Pitts, 411 U.S. 138, 142 (1973).  Accordingly, this Court's task is to determine whether the

agency's decision was reasonable, that is, "whether it considered relevant factors and explained

the facts and policy concerns on which it relied, and whether those facts have some basis in the

record." Nat'l Treas. Employees Union v. Horner, 854 F.2d 490, 498 (D.C. Cir. 1987).

Furthermore, it is well-established that an agency's interpretation of its own regulations is

entitled to substantial deference.  See, e.g., Lyng v. Payne, 476 U.S. 926, 939 (1986) and United

States v. Larinoff, 431 U.S. 864, 872 (1977).  Thus, the agency's interpretation must be accepted

unless "manifestly unreasonable." Liberty Maritime Corp. v. United States, 928 F.2d 413, 419

(D.C. Cir. 1991) (quoting National Wildlife Federation v. Gorsuch, 693 F.2d 156, 174 (D.C. Cir.

1982)).

### ii.    Defendants Followed Their Policies and Procedures

Pursuant to 46 U.S.C. § 51318 the "[t]he [Secretary] shall direct the Superintendent of the

United States Merchant Marine Academy to prescribe a policy on sexual harassment and sexual

assault applicable to the cadets and other personnel of the Academy."  Under the general

authority prescribed under 46 C.F.R. § 310.67, Congress relied upon the agency to promulgate

misconduct policies and disciplinary procedures for midshipmen.  Accordingly, the Academy

crafted SI 2016-02, (Plaintiff's Ex. B), Procedures for Superintendent's Disciplinary Hearing in

the Case of Sexual Assault/Harassment ("Procedures" or "SA/SH Procedures") (Plaintiff's Ex.

D), and Midshipman Regulation 243 (Sexual Misconduct) and 704 (Classification of Violations).

Plaintiff's Ex. C.

       Plaintiff's only allegations in support of his argument that Defendants did not follow their

own policies are that: 1) Plaintiff's hearing was not before an Executive Board ("E-Board") as

provided for in Midshipman Regulations Chapter 10; and 2) Plaintiff's cross-examination of the

Complainant was limited to written questions asked by the Superintendent rather than direct

confrontation as purportedly provided for in Superintendent Instruction 2016-02. See Complaint

¶¶ 91-92; Plaintiff's Memorandum of Law ("Pl. Mem.") at p. 20.  However, under SI 2016-02

and the outlined SA/SH Procedures, any Midshipman accused of sexual misconduct is not

entitled to an E-Board Hearing but rather a Superintendent's Disciplinary Hearing.  Plaintiff fails

to explain why he believes he was entitled to an E-Board hearing; in any event, the procedures

for an E-Board hearing are virtually identical to those of the Superintendent's Disciplinary

Hearing.  Compare Plaintiff's Exs. B, D and Ex. C; Helis Decl. at Exhibit 3.  The E-Board sends

its recommendation regarding a disciplinary penalty to the Superintendent, who reviews and acts

on the E-Board's recommendation and issues his final decision.  Plaintiff's Ex. C, paragraph

1004.  The Superintendent does not have to accept the E-Board's recommendation as to a

disciplinary penalty.   Furthermore, since by statute, the Superintendent was required to

promulgate policies specific to sexual misconduct, those disciplinary procedures, not the general

policies governing other disciplinary procedures such as a hearing before an E-Boards, would

apply.  With respect to Plaintiff's objection to having to submit written questions to the

Complainant, the Procedures expressly permit the Superintendent to "direct that the testimony to

be provided by one or more witnesses [be] by alternative means, such as remotely via VTC,

behind a screen or through written questions."  Plaintiff's Ex. D, SA/SH Procedures, III.B.3(a).

The E-Board procedures provide for the same means of questioning witness, including by written

questions.  Helis Decl., Exhibit 3.

Any other allegations related to the Academy's failure to follow its own policies or

procedures are simply not rooted in the actual policies, or constitute Plaintiff's interpretation of,

or disagreement with, the policies.  See Pl. Mem. at p. 20.  To the extent that the Complaint can

be read to allege further violations of the Academy's policies and procedures, deference is owed

to the Academy's interpretation of its own policies.  As discussed above, the Academy's policies

and procedures with respect to sexual misconduct were enacted in accordance with 46 U.S.C.

§ 51318 and other regulatory authority for the general operation and governance of the

Academy.  Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S.

837 (1984), courts employ a two-step process in determining whether deference should be given

to an agency interpretation of its regulations and/or governing statutes.  First, the court inquires

whether Congress has directly spoken to the precise question at issue.  "If the intent of Congress

is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress."  Id. at 842.  If, on the other hand, the statute is

ambiguous "the court does not simply impose its own construction on the statute."  Id. at 843.

Rather, where a regulation is ambiguous "as to the question presented," the court must consult

the agency's "own interpretation of the regulation for guidance in deciding th[e] case."  Chase

Bank USA, N.A. v. McCoy, 562 US 195, 207-208 (2011).  As long as the agency's interpretation is not "plainly erroneous or inconsistent with the regulation," courts are bound to accept it as correct.  Couer Alaska, Inc. v. Southeast Alaska Conservation Council, 557 U.S. 261, 278 (2009).

The Supreme Court has "recognized a very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." United States v. Mead Corp., 533 U.S. 218, 229 (2001) (citations omitted).  The Court held that Chevron deference is mandatory when Congress has expressly or implicitly indicated that it intended an agency to speak with the force of law on a matter, and the agency's position on that matter is reasonable.  Id. at 226-27.  The Court explained that Congress generally intends for an agency to speak with the force of law when it provides for a formal administrative procedure, such as notice and comment rulemaking or formal adjudication.  Id. at 229.  In Barnhart v. Walton, 535 U.S. 212, 218-20 (1995), the Court held that Chevron deference is likewise proper when a statute does not unambiguously forbid regulation, where its construction is reasonable, where the agency's regulations reflect its longstanding interpretation, and where Congress has frequently amended or reenacted the relevant provisions without change.

Here, it is undeniable that the procedures governing discipline for sexual misconduct promulgated by the Superintendent are based on the statutory commands that "[t]he [Secretary] shall direct the Superintendent of the United States Merchant Marine Academy to prescribe a policy on sexual harassment and sexual assault applicable to the cadets and other personnel of the Academy" (46 U.S.C. § 51318) and "[t]he Secretary shall maintain the United States Merchant Marine Academy to provide instruction to individuals to prepare them for service in

the merchant marine of the United States." 46 U.S.C. § 51301. Therefore, deference should be given to the Academy's interpretation and implementation of its policies and procedures governing sexual misconduct and subsequent disciplinary actions.

### iii. Defendants' Decision Was Not Arbitrary, Capricious or Contrary To Law

The Academy's decision to setback Plaintiff but still allow him to complete his coursework, take his licensing exams, and graduate in 2019 was neither arbitrary, capricious, an abuse of discretion, nor contrary to law. As discussed above, in an action under the APA, the reviewing court must uphold the agency's action unless it finds it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See pp. 7-8 infra (citing 5 U.S.C. § 706(2)(A)). The standard of review is highly deferential to the agency's decision. The scope of review is narrow and a court is not to substitute its own judgment for that of the deciding agency. Indeed, there is a presumption of regularity as to the agency's decision.

Nevertheless, the court's review must be thorough to ensure that the Academy based its decision on consideration of all relevant factors, and examined the relevant data and that there is a rational connection between the facts found and the decision made. As outlined in his February 12, 2018 decision, the Superintendent based his decision upon a review of all the testimony, documentary evidence, including photographs and social media screenshots, a letter from Plaintiff's attorney and Plaintiff's voluntary opening and closing statements. See Plaintiff's Ex. I. During the hearing, the Superintendent heard testimony of eleven witnesses, including the Complainant and the Plaintiff, and several other Midshipman who may have witnessed the Complainant or Plaintiff at or around the time of the charged incident. See Declaration of James Helis, dated April 3, 2018 ("Helis Decl."), ¶ 17; Complaint, ¶ 117. Contrary to Plaintiff's contentions, this was an administrative hearing subject to a lower standard of review than a

12

criminal proceeding, and therefore the Superintendent was entitled to weigh the evidence

accordingly.  See Plaintiff's Ex. D, Procedures, III.B.6 ("The Superintendent will evaluate the

facts and determine whether the charge(s) as set forth in the Notice are sustained . . . The

Superintendent will consider all the data available pertaining to the offense(s) in order to arrive

at an objective determination as to whether Respondent committed the violations as charged.").

See also Weber v. State Univ. of N.Y., 150 A.D.3d 1429, 1430 (3d Dep't. 2017) ("Moreover,

credibility determinations are 'within the sole province of [the Vice President of Student

Affairs].")(internal quotations omitted).  Indeed, upon review of the evidence, the Superintendent

dismissed one charge as redundant and found that Plaintiff had not committed the charge for

violation of Midshipman Regulations paragraph 204(f) related to prevention of underage

drinking.

**2.      Plaintiff is Not Entitled to Judgment on His Constitutional Claims**
**i.      Procedural Due Process**

Plaintiff appears to seek an administrative procedure akin to the process afforded a

criminal defendant and outlines a laundry list of alleged violations of procedural due process. Pl.

Mem at p. 19-21.  However, all that is required for procedural due process under the Fifth

Amendment is that a Midshipman be given a "fair hearing at which he is apprised of the charges

against him and permitted a defense."  See Wasson v. Trowbridge, 382 F.2d 807, 812 (2d Cir.

1967); Lightsey v. King, 567 F.Supp. 645, 649 (E.D.N.Y. 1983); see also Flaim v. Med. Coll. Of

Ohio, 418 F.3d 629, 635 n.1 (6th Cir. 2005) ("A university is not a court of law, and it is neither

practical nor desirable it be one.") see also Winnick v. Manning, 460 F.2d 545, 549 (2d Cir.

1972) ("[t]he right to cross[-]examine witnesses generally has not been considered an essential

requirement of due process in school disciplinary proceedings"). "Few decisions properly rest so

exclusively within the discretion of the appropriate government officials than the selection,

13

training, discipline and dismissal of the future officers of the military and Merchant Marine. …

A military proceeding conducted within these bounds of procedural due process would be proper

and immune from constitutional infirmity. We and other tribunals have expanded at an

accelerated pace the scope of judicial access for review of military determinations.  Nevertheless,

we recognize the constitutional permissibility of the military to set and enforce uncommonly

high standards of conduct and ethics." Andrews v. Knowlton, 509 F.2d 898, 904-905 (2d Cir.

1975).  In a similar matter in which a plaintiff was accused of a sexual assault, the court in Doe

v. Univ. of S. Alabama, denied a plaintiff's request for a temporary restraining order, and found

that:

> "[A]fter reviewing the circumstances of the disciplinary hearing and the Defendants'
> decisions [ ]  Plaintiff has not met his burden of showing a substantial likelihood of
> success. The Defendants arguably followed all of South Alabama's policies and
> procedures, they provided Plaintiff with notice of the charges and the evidence gathered
> in their investigation, and they afforded Plaintiff a hearing with an opportunity to present
> a statement and present witnesses and other evidence in his defense. The Court does not
> find that Plaintiff has shown a substantial likelihood of establishing a violation of his due
> process rights regarding the hearing…".

No. CV 17-0394, 2017 WL 3974997, at *4 (S.D. Ala. Sept. 8, 2017).  In addition, the court

specifically found that plaintiff was "permitted to cross-examine the complainant during the

hearing in a meaningful way" through the submission of written question to the hearing officer.

Id. 2017 WL 3974997, at *3.

Despite the minimum requirements for due process in school disciplinary proceedings,

the Academy's regulations provide for additional procedures, including: the right to receive the

investigatory file; the right to seek advice and assistance of legal counsel who can be present at

the hearing; the right to a faculty advisor; the right to be present during the entire hearing; the

right to make opening and closing statements; the right to present evidence including documents

and testimony; and the right to question all witnesses.  See Plaintiff's Exhibit D, SA/SH

14

Procedures at I.D.1-9.  Here, Plaintiff was afforded each and every procedure outlined above.

Indeed, Plaintiff does not dispute that he was advised of the charges against him or that he was given a hearing where he was permitted to present evidence on his own behalf.  See Complaint, ¶¶ 65-72 (alleging that Plaintiff received notice of the disciplinary hearing, the charges against him, a list of Plaintiff's rights prior to and at the hearing, the investigation report, Plaintiff's academic file and transcript, Plaintiff's Company File and Midshipman Profile, Plaintiff's Personnel Jacket, and Plaintiff's Sea Year File); ¶ 103 (alleging that Plaintiff and his advisor gave opening statements at the hearing); ¶ 104 (alleging that Plaintiff was permitted to question the Complainant by submitting a list of questions rather than directly confronting her); ¶ 117 (alleging that Plaintiff called seven witnesses to testify on his behalf).

Rather, Plaintiff seeks to: 1) have procedures implemented beyond the requirements of the Fifth Amendment and what is already provided for pursuant to the Superintendent's authority to promulgate rules and regulations that govern the operation of the Academy; and 2) to voice general dissatisfaction with the implementation of the policies and procedures of the Academy.

### ii. Impartial Decisionmaker

Plaintiff complains that the Superintendent was not an impartial or unbiased hearing officer or decision-maker.  Pl. Mem., pp. 18-19.  However, Plaintiff provides no basis in fact or law as to how the Superintendent was biased other than to baldly claim that one who works for the agency and also hears the evidence and makes the decision in an administrative proceeding has "the appearance of bias."  Pl. Mem. p. 18.  Contrary to Plaintiff's wholly conclusory allegation unsupported by any factual allegations, there is a "strong presumption that administrative decisionmakers are impartial."  See DeFabio v. East Hampton Union Free School Dist., 658 F. Supp. 2d 461, 492 (E.D.N.Y. Oct. 1, 2009) (internal citation omitted), also citing McDonald ex rel. McDonald v. Sweetman, 2004 WL 717166, at *4 (D.Conn. Mar. 24,

2004)("While [plaintiff] may rightly feel that she was tried, convicted, and sentenced by school officials who had already made up their minds, the fact remains that before she was suspended, [plaintiff] was given oral notice of the charges against her, an opportunity to prevent her version of the facts, and an explanation, however feeble, of the evidence against her. That is all the process that is required under the Constitution."); Weber, 150 A.D.3d at 1433 ("[b]ecause hearing officers are presumed to be free from bias, an appearance of impropriety is insufficient to set aside an administrative determination; the petitioner must provide factual support for his or her claim of bias and prove that the outcome flowed from that bias.").  The Second Circuit has held that "…the mere fact that the decision maker in a disciplinary hearing is also an administrative officer of the University does not in itself violate the dictates of due process." Winnick, 460 F.2d at 549.

### iii.    Notice of the Issue of Consent

Plaintiff argues that the Academy failed to provide notice of the issue of "consent." Pl. Mem., p. 19. Despite acknowledging that "consent" is defined under SI 2016-02, Plaintiff appears to argue that the Academy should have provided additional guidance on the level of intoxication that would make a person unable to lawfully give consent.  Notably, the Academy's definition of sexual assault and consent comport with New York Senate Bill 5965 from 2015, an act to amend the education law in relation to sexual assault at colleges and universities, which requires education institutions to adopt this definition of consent.[3]

See http://legislation.nysenate.gov/pdf/bills/2015/S5965 ("[C]onsent cannot be given

when a person is incapacitated which occurs when an individual lacks the ability to

---

[3] The Academy, a federal institution not bound by New York State law, has language similar to the language provided for by the New York State legislature.

knowingly choose to participate in sexual activity…depending on the degree of intoxication, someone who is under the influence of alcohol, drugs or other intoxicants may be incapacitated and therefore unable to consent.").

Accordingly, the Superintendent assessed, based upon the documentary evidence and testimony, whether Complainant was intoxicated to the point of being unable to consent and whether Plaintiff should have reasonably known she was impaired due to the use of alcohol and unable to consent. See Plaintiff's Ex. B, paragraph 5.  In his February 8, 2018 letter sent in advance of the hearing, Plaintiff acknowledges that he was on notice that Complainant's level of intoxication was at issue.  See Plaintiff's Ex. H ("Critically, as to the key facts-whether [Complainant] was legally able to consent by reason of intoxication and whether she in fact gave her consent to sexual contact-. . . .").  Furthermore, Plaintiff and his attorneys were able to prepare a defense that consisted of opening and closing statements that addressed the issue of intoxication, and questioned witnesses related to alcohol consumption on the night in question.

### iv.   Conduct of the Hearing

Plaintiff complains that although his attorney was allowed to attend the hearing, the attorney was not permitted to participate in the hearing and Plaintiff had to conduct his own examinations, thus depriving Plaintiff of the right to counsel.  Pl. Mem, p. 21. This Court has previously held that a student at the Academy is not entitled to representation at a non-criminal proceeding.  See Crowley v. United States Merchant Marine Academy, 985 F. Supp. 292, 297 (E.D.N.Y. 1997) ("[C]ourts generally have declined to recognize a right to representation by counsel, as a function of due process, in military academy disciplinary proceedings concerning non-criminal acts, such as the accumulation of demerits and violations of the Honor Code.").  However, contrary to Plaintiff's contentions, Plaintiff's attorney provided extensive advice and

17

assistance throughout the hearing.  For example, Plaintiff's attorney and faculty advisor sat with Plaintiff as he questioned witnesses, verbally directed Plaintiff, and pointed out which questions to ask from prepared outlines of questions, provided verbal advice throughout the hearing and prepared large binders of materials for Plaintiff's use at the hearing.  Helis Decl. ¶¶ 23, 25.  In addition, Plaintiff claims that he should have been allowed to have two attorneys present, but he does not allege any actual difficulties of being limited to one attorney and a faculty advisor. Pl. Mem at p. 21.  Based upon the extensive interaction between Plaintiff and his attorney, Plaintiff cannot possibly claim that he was deprived of the right to legal advice or representation.[4]

Plaintiff also takes issue with the length of the hearing itself, but makes no argument as to how, if at all, he was prejudiced by the length of the hearing or how he would have proceeded differently had the hearing been held over the course of another day.  Pl. Mem. p. 20. Furthermore, the Academy's portion of the hearing started at approximately 10:15 a.m. and concluded by approximately 5 p.m.  Helis Decl. ¶ 24.  During the Academy's presentation of the case, Plaintiff was not limited in the amount of time permitted to give an opening statement or question the Academy's witnesses.  In fact, he questioned one witness for over one hour.  Helis Dec. at ¶¶ 22, 28.  Plaintiff's written questions to the Complainant were done in two separate rounds.  Helis Dec. at ¶ 26.  In the additional five hours, Plaintiff presented his portion of the case, including calling and questioning seven witnesses.  See Complaint at ¶¶ 117-118.  Breaks were taken throughout the hearing, including for lunch and to provide Plaintiff with the opportunity to consult with is attorney and presumably, the second attorney who was waiting

---

[4] Indeed, Plaintiff's mother, in advance of the penalty phase, submitted a letter to the Academy claiming that she has paid over $130,000 in legal fees since January 2018 to defend the disciplinary proceeding.  Thus, it can reasonably be concluded that Plaintiff was prepared for the hearing.

outside the hearing room.   Helis Decl. ¶ 21.  A dinner break was provided, however, the cafeteria at the Academy had already closed and the Superintendent decided to continue the hearing.  Helis Decl. ¶ 21.

Plaintiff also makes several "evidentiary" complaints.  First, Plaintiff complains that the Superintendent should have called "exculpatory" witnesses, but does not specify in what way any of the alleged exculpatory witnesses would provide exculpatory testimony.  Pl. Mem at p. 21.  Indeed, many of the witness interviews, as outlined in Report of Investigation provided to Plaintiff, were simply equivocal, stating, in sum and substance, that they did not remember seeing the Complainant or Plaintiff throughout the night or did not know how much alcohol they had consumed.  See Helis Decl. ¶¶ 17-18. Furthermore, Plaintiff was on notice of the identity of these witnesses and the content of any testimony they might provide, and indeed, Plaintiff called several of them to testify.[5]  See Plaintiff's Ex. D, at page 2 (list of witnesses); Helis Decl. ¶ 17. Plaintiff's additional complaint that the Superintendent had access to the unsworn statements of other witnesses who did not testify at the hearing fails to identify such statements or address whether Plaintiff believes that the Superintendent was improperly influenced by these statements.  Pl. Mem at p. 21. In his written decision, the Superintendent states that his decision was based upon review of the evidence adduced at the hearing.  See Plaintiff's Ex. I.

Second, Plaintiff argues that his attorney should have been permitted to testify as to his interactions with law enforcement regarding Plaintiff's candor.  Pl. Mem at p. 21.  The

---

[5]      Even in a criminal context, which of course this is not, "once an exculpatory witness is identified to the defendant, the prosecutor's duty ends, provided that the witness is equally available to the defense." People v. Arthur, 673 N.Y.S.2d 486, 505 (N.Y. Sup. Ct. 1997)

Superintendent declined this testimony because, as presiding official, he assesses credibility, and the opinions of others as to credibility are not relevant.  Helis Decl. ¶ 24.

Lastly, Plaintiff argues that he should have been permitted to explore alleged bias by inquiring into Complainant's sexual history with another witness and questioning a witness about his disciplinary history and his relationship with Plaintiff.  Pursuant to Superintendent Instruction 2016-02, sexual history is precluded from being introduced during the hearing.  See Plaintiff's Ex. B, 6(f)(v).  This policy is in line with New York's rape shield law, which precludes admission of evidence of a victim's sexual conduct in a prosecution for sexual assault.  See, e.g., Grant v. Demskie, 75 F. Supp. 2d 201, 209-210 (S.D.N.Y. 1999).  Furthermore, Plaintiff cross-examined this witness on his own disciplinary record, the relationship between Plaintiff and witness, and relationship between the witness and the Complainant.  Helis Decl. ¶ 22.

Plaintiff has provided no legal support for its contentions that these procedures, or any others raised in the Complaint, were insufficient under the Due Process Clause.  In light of the overwhelming case law requiring minimum process for school disciplinary proceedings, the Academy complied with all that is required and more.  Accordingly, Plaintiff cannot show that he was deprived procedural due process.

### v.   Substantive Due Process

Plaintiff alleges that he was deprived of substantive due process on the grounds that Defendants improperly found Plaintiff guilty of sexual assault and punished him (Complaint, ¶ 147); Defendants violated their own policies and their decision was arbitrary and capricious (Complaint, ¶ 148); Defendants' conduct was motivated by ill will or bad faith (Complaint, ¶ 149); and Defendants "deliberately and prejudicially assumed Plaintiff's guilt" (Complaint, ¶ 150).

"In order to establish a violation of a right to substantive due process, a plaintiff must

demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" C.T. v. Valley Stream Union Free Sch. Dist., 201 F. Supp. 3d 307, 318–19 (E.D.N.Y. 2016) (citing Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)).  "[M]erely incorrect" or "ill-advised" conduct is insufficient to state a claim for substantive due process.  See Horton v. Westling, 2018 WL 922190, at *6-*7 (N.D.N.Y. Feb. 15, 2018).  Plaintiff's substantive due process claim appears to be grounded in the Academy's disciplinary procedures as opposed to an allegation that such disciplinary policies or procedures "transgressed the outer limit of legitimate governmental action".  Id. at *7 (internal quotations omitted).  Furthermore, Plaintiff makes no allegations in his Complaint or otherwise[6] as to how Defendants deprived Plaintiff of a constitutionally protected right with bad faith or ill will that can be distinguished from his procedural due process claim.  Here, Plaintiff's conclusory allegations, even if taken as true, are not "sufficiently egregious to plausibly allege a substantive due process claim".  Id. (failure to state a claim for substantive due process where student plaintiff acknowledged that he was provided two hearings and permitted the opportunity to testify on his own behalf).

### vi.   Bivens

The Complaint is devoid of any allegations that can plausibly be construed as stating a purported claim pursuant to Bivens.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").   The government has not waived sovereign immunity for a Bivens claim against

---

[6] Plaintiff's Mem. of Law also does not identify any specific violations of substantive due process.

the United States, an agency of the United States or an individual sued in an official capacity.

See Harrison v. New York, 95 F. Supp. 3d 293, 316 (E.D.N.Y. 2015)( "[A] Bivens claim against

a federal agency is precluded, as an action against a federal agency is essentially a suit against

the United States, and Bivens actions against the United States are barred under the doctrine of

sovereign immunity.")

　　　　Further, Bivens claims are not cognizable in an action brought under the APA because

the APA provides Plaintiff with an adequate available remedy.  See Wilkie v. Robbins, 551 U.S.

537, 561-62 (2007).  Since the Supreme Court ruled in Bivens, it has "consistently refused to

extend Bivens liability to any new context or new category of defendants."  Corr. Servs. Corp. v.

Malesko, 534 U.S. 61, 68 (2001).  The only two circumstances under which the Supreme Court

has extended Bivens liability do not apply here.  See Davis v. Passman, 442 U.S. 228, 247

(1979) (political appointee alleged sex discrimination claim against a member of Congress);

Carlson v. Green, 446 U.S. 14, 20 (1980) (prisoner brought claim against prison officials for

failure to provide adequate medical care violated the Eighth Amendment). Thus, a purported

Bivens claim is not cognizable in this context.

**B.     Plaintiffs Have Not Shown Irreparable Harm**

　　　　Irreparable harm must be shown by the moving party to be actual and imminent, not

remote or speculative.  See Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir.

1990); Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989). Plaintiff

must establish more than the mere "possibility" thereof, he must establish that such harm is

likely in the absence of an injunction.  Id.

　　　　"The Second Circuit has observed that preliminary injunctions are generally granted under

the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.  Delay in

seeking enforcement of those rights, however, tends to indicate at least a reduced need for such

drastic, speedy action ... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction." Costello v. McEnery, 767 F. Supp. 72, 78 (S.D.N.Y.1991) (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)) (quotations omitted).  "The Second Circuit [has] further held . . . that lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm . . . ."  Id. (quoting Majorica, S.A. v. R.H. Macy & Co., Inc., 762 F.2d 7, 8 (2d Cir. 1985)) (citations and quotations omitted).

Here, after being provided with notice of his setback on or about February 12, 2018, Plaintiff requested, and was granted, additional time to submit an application for reconsideration. Thereafter, the reconsideration was denied and Plaintiff was ordered to leave the Academy on March 20, 2018. The instant Order to Show Cause was not filed until March 28, 2018.  Plaintiff has been aware since February 12, 2018 that he was set-back to the class of 2019 due to the disciplinary findings.  Thus, Plaintiff, who could have filed the instant action much earlier, has not shown any urgency to remain at the Academy.

In addition, Plaintiff has not shown that he will be irreparably harmed if he is required to complete his final term and graduate in 2019 as reinstating him at this juncture would constitute a change in the status quo since he has not been attending classes or on campus since at least March 23, 2018.

**C.** **Plaintiffs Have Not Shown That The Balance Of The Equities And The Public Interest Tilt In Their Favor**

When the Federal Government is a party, the balance of equities and public interest requirements may be merged.  Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014); Mashack v. Jewell, 149 F. Supp. 3d 11, 29 (D.D.C. 2016).  To begin with, "[i]n

23

exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, there is a significant public interest in insuring that a taxpayer-funded service Academy, providing a free education to midshipmen, graduate only those midshipmen who have "conduct[ed] themselves with propriety, sobriety, decorum and sound judgment" and that they are "professional officers and leaders of honor and integrity, who are dedicated to serving the economic and defense interests of the United States."  On balance the government's weighty interest in disciplining a midshipman for a violation of student policy as serious as sexual assault prevails over Plaintiffs' interest in completing his coursework now and waiting until 2019 to graduate.  The Superintendent adhered to the Academy's mission and acted to protect the public interest by serving appropriate punishment for a serious violation.

## POINT II

### PLAINTIFF IS NOT ENTITLED TO FILE AS JOHN DOE

The Second Circuit has held that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity **outweighs** [1] prejudice to the opposing party and [2] the public's interest in knowing the party's **identity**. Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 189 (2d Cir. 2008).

In addition, the Second Circuit "identified a non-exclusive list of factors that a court may consider when performing this balancing test." Plaintiffs #1-21 v. Cnty. of Suffolk, 138 F. Supp.

3d 264, 271 (E.D.N.Y. 2015).[7] Some of the relevant factors include: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; and (3) whether the plaintiff's identity has thus far been kept confidential. Id.

The most relevant factor here is that Plaintiff has already disclosed his identity and the nature of the allegations, namely a sexual assault. Plaintiff posted on two Academy Facebook forums, his class and his company, that he had been found guilty of a Class I violation. In one post, he specifically stated that he had "been found guilty of sexual assault and now wait punishment from Helis." See Helis Decl., at ¶ 35, 36, Exhibits 5, 6, 7.[8] According to the Facebook print-outs, one was seen by 44 people and one by 28 people. Id.

In addition to posting on social media, Plaintiff submitted numerous character letters for the Phase II of the hearing, the punishment phase. In virtually every letter, the writer, including his grandmother, acknowledged awareness of the allegations. See Midshipmen ("MN") E.D. ("…as I am aware of what M/N [] is accused of…"); MN M.H. ("skeptical of the allegations when I heard them"); MN D. C. ("has been determined guilty of sexual assault"); MN E.A. ("I am aware of his recent disciplinary situation"); MN O.B. ("To hear of accusations against John Doe is shocking to say the least, while I may not be privy to all evidence…"); MN W.C. (I

_____

[7] Plaintiff has not briefed or addressed the issue of whether or not the complaint may be filed under a pseudonym. Accordingly, the government address only the most relevant factors. The government respectfully requests the opportunity to respond to any additional factors raised by Plaintiff.

[8] Plaintiff was disciplined for posting on social media the outcome of the hearing. He received 50 demerits, 8 weeks restriction and 10 hours of extra duty. See Declaration, dated April 3, 2018, at ¶ 36.

understand he is under investigation for violating school policy…"); MN T.D. (" I am aware of []
situation and the nature of the allegations…"); MN S.H. ("In spite of recent allegations…"); MN
M.S. ("..this letter is written with full knowledge of the accusations"); MN J.T.("I am aware of
the allegations"); Cousin A.D. ("I am aware of the situation and the nature of the allegations")
and Grandmother ("this unfortunate accusation").

Plaintiff has notified numerous individuals, including friends and family, about the nature
of the allegations.  In addition, Plaintiff's posts to Facebook about the outcome of the hearing
were seen by many other midshipman at the Academy.  While the "litigation involves matters
that are highly sensitive and of a personal nature," Plaintiff has apparently discussed the nature
of the allegations with individuals both on and off Academy grounds.  The incident occurred in
August 2017 and the disciplinary hearing was held in February 2018.  Plaintiff's name was never
confidential and Plaintiff has not identified any "retaliatory physical or mental harm" due to the
nature of the allegations occurring eight months ago.  Accordingly, the complaint should be filed
under Plaintiff's name and not a pseudonym.

## CONCLUSION

For the reasons set forth above, this Court should grant deny Plaintiff's application for

injunctive relief he seeks and dismiss the Complaint in its entirety.

Dated: Central Islip, New York
      April 3, 2018

                                      Respectfully submitted,
                                      RICHARD P. DONOGHUE
                                      United States Attorney
                                        Eastern District of New York
                                        Attorney for Defendants
                                        610 Federal Plaza
                                        Central Islip, New York 11722


                          By:      s/Diane C. Leonardo
                                        Diane C. Leonardo
                                        Megan J. Freismuth
                                        Assistant United States Attorneys
                                        (Of counsel)